IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ACCURIDE CORPORATION,<br>et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-13449 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 20, 2010 at 10:00 a.m.**<br>**Objection Deadline: January 13, 2010 at 4:00 p.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR AN ORDER (A) COMPELLING THE *AD HOC* NOTEHOLDER GROUP TO COMPLY WITH FED. R. BANKR. P. 2019; (B) PROHIBITING FURTHER PARTICIPATION IN THESE CASES BY THE *AD HOC* NOTEHOLDER GROUP PENDING COMPLIANCE WITH FED. R. BANKR. P. 2019; AND (C) DIRECTING THE DEBTORS TO WITHHOLD FURTHER PAYMENTS TO OR ON BEHALF OF SUCH GROUP PENDING COMPLIANCE WITH FED. R. BANKR. P. 2019

The Official Committee of Equity Security Holders (the "Equity Committee") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby files this motion (the "Motion") to compel the *Ad Hoc* Noteholder Group (the "*Ad Hoc* Noteholder Group" or the "Noteholders") (a) to comply with Federal Rule of Bankruptcy Procedure 2019 ("Fed. R. Bankr. 2019"), (b) prohibiting further participation in these cases by the *Ad Hoc* Noteholder Group pending compliance with Rule 2019 and (c) directing the Debtors to withhold further payments to or on behalf of such group or its

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Accuride Corporation, a Delaware corporation (9077); Accuride Cuyahoga Falls, Inc., a Delaware corporation (9556); Accuride Distributing, LLC, a Delaware limited liability company (3124); Accuride EMI, LLC, a Delaware limited liability company (N/A); Accuride Erie L.P., a Delaware limited partnership (4862); Accuride Henderson Limited Liability Company, a Delaware limited liability company (8596); AKW General Partner L.L.C., a Delaware limited liability company (4861); AOT Inc., a Delaware corporation (3088); Bostrom Holdings, Inc., a Delaware corporation (9282); Bostrom Seating, Inc., a Delaware corporation (7179); Bostrom Specialty Seating, Inc., a Delaware corporation (4182); Brillion Iron Works, Inc., a Delaware corporation (6942); Erie Land Holding, Inc., a Delaware corporation (8018); Fabco Automotive Corporation, a Delaware corporation (9802); Gunite Imperial Group Holding Corp. -2, a Delaware corporation (4009); Imperial Group, L.P., a Delaware limited partnership (4012); JAII Management Company, a Delaware corporation (N/A); Transportation Technologies Industries, Inc., a Delaware corporation (2791); and Truck Components Inc., a Delaware corporation (5407).

1

members pending compliance with Rule 2019. In support of the Motion, the Equity Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The *Ad Hoc* Noteholder Group is playing a pivotal role in these bankruptcy cases. In fact, it is influencing - if not driving - many of the key decisions for the Debtors, *including* the Debtors' woeful treatment of its shareholders who stand to receive a pittance (generously characterized by the Debtors as a "tip" to equity) while members of the *Ad Hoc* Noteholder Group receive a windfall.[2]

2. Obviously concerned by the light that an active and vigilant Equity Committee will shed upon the true valuation of the Debtors and upon the actions of the Noteholders, the *Ad Hoc* Noteholder Group has launched a massive attack upon the Equity Committee. Indeed, the Noteholders' campaign against the rights of the shareholders commenced even before the Equity Committee was formed, as evidenced by the *Ad Hoc* Noteholder Group's fierce opposition to the appointment of an equity security holders' committee.

3. Since its formation, the *Ad Hoc* Noteholder Group has aggressively continued its offense against the Equity Committee. It has opposed virtually every action by the Equity Committee and has been the ***only*** party in this case that has actively sought to disenfranchise and immobilize the Equity Committee.

---

[2] Despite the Debtors' contention that Class 7 (consisting of the prepetition noteholders) will receive only a 42.5% recovery, the notes are currently trading at approximately *85* cents, i.e., close to par. See Exhibit A attached hereto (reflecting recent bond trading activity).

2

12691124

4.  Recently, the *Ad Hoc* Noteholder Group filed a motion to disband the Equity Committee. The *Ad Hoc* Noteholder Group has now filed objections to the Equity Committee's applications to employ legal counsel (and intends to file a similar objection to the Equity Committee's application to employ a financial advisor) on the grounds that the Equity Committee should not be entitled to compensation of its professionals from the estates until it proves that equity "is in the money." This is yet another tactic by the *Ad Hoc* Noteholder Group to thwart the Equity Committee. In short, the Noteholders are intent on creating an obstacle course for the Equity Committee to make it as difficult as possible for the Equity Committee to efficiently and adequately prepare for the confirmation hearing on February 10th (where the Debtors will seek confirmation of a plan for which the *Ad Hoc* Noteholder Group is *the* major proponent and beneficiary).

5.  In light of the *Ad Hoc* Noteholder Group's central role in these cases and its fierce attack upon the Equity Committee, it is essential that the *Ad Hoc* Noteholder Group adequately identify themselves as required by Rule 2019. Rule 2019 requires that all entities, ***including ad hoc committees***, which present a single unified voice to the Court and other parties, ***must*** provide the information required by Rule 2019 or suffer the consequences (including possibly being barred from further participating in the cases).

## BACKGROUND

6.  On October 8, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors presented the case as a "pre-negotiated" plan (the "Pre-Negotiated Plan") which had the approval of certain major constituents of the

3

12691124

Debtors, including a majority of their pre-petition lenders (the "Supporting Lenders") and noteholders (the "Supporting Noteholders"). Based upon the plan support agreement believed to have been executed by the Supporting Noteholders (the "Noteholder Plan Support Agreement"), the Supporting Noteholders are: Blackrock Financial Management, Inc., Brigade Capital Management, LLC, Canyon Capital Advisors LLC, Principal Global Investors LLC, Sankaty Advisors, LLC, Prospect Funding I, LLC, and Tinicum Incorporated. An unexecuted copy of the Noteholder Plan Support Agreement is available at Exhibit C to the Declaration of James H. Woodward, Jr. in Support of Chapter 11 Petitions and First Day Motions [Docket No. 3].

7. Also on the Petition Date, counsel for Milbank, Tweed, Hadley & McCloy LLP ("Milbank") made an appearance in these cases on behalf of certain of the "holders of Accuride Corp.'s 8.5% Senior Subordinated Notes due 2015" and consisting of BlackRock Financial Management, Inc., Brigade Capital Management, LLC, Canyon Capital Advisors LLC, Principal Global Investors, Sankaty Advisors, LLC and Tinicum Incorporated. *See* Notice of Appearance and Request for Service of Notices and Papers by Milbank, Tweed, Hadley & McCloy LLP As Counsel for *Ad Hoc* Noteholder Group (the "AHNG NoA") [Docket No. 26]. A true and correct copy of the AHNG NoA is attached hereto as Exhibit B. The group represented by Milbank styled itself as the "*Ad Hoc* Noteholder Group." Based upon the Noteholder Plan Support Agreement and the AHNG NoA, it appears that the members of the *Ad Hoc* Noteholder Group and Supporting Noteholders are identical.

8. The professionals for the *Ad Hoc* Noteholder Group (including legal counsel, Milbank and Pachulski Stang Ziehl & Jones LLP ("Pachulski"), and financial

4
12691124

advisor, Rothschild) are being compensated by the Debtors' estates, as indicated in the Debtors' DIP budget, a copy of which is attached hereto as Exhibit C.

9. On November 18, 2009, the Debtors filed the Joint Plan of Reorganization for Accuride Corporation, *et al.* (as amended, the "Plan") and a corresponding Disclosure Statement (as, amended, the "Disclosure Statement"). The Plan incorporated the terms of the Pre-Negotiated Plan. The lynchpin of the Plan is a rights offering (the "Rights Offering") that is available to certain of the noteholders (the "Subscribing Noteholders"), including upon information and belief, all of the members of the *Ad Hoc* Noteholder Group. The Rights Offering is backstopped (the "Backstop Commitment") by certain members of the *Ad Hoc* Noteholder Group (the "Backstop Investors").[3] As discussed more fully in the Equity Committee's objection to the Rights Offering Motion (defined below), the Equity Committee believes that the term of the Rights Offering and Backstop Commitment are excessive and highly favorable to the Subscribing Noteholders and Backstop Investors.

10. On November 19, 2009, the United States Trustee appointed the Equity Committee as an official committee in these cases over the formal, written objections of the Debtors and the *Ad Hoc* Noteholder Group.

11. On December 1, 2009, the Debtors filed their motion to approve the Rights Offering (the "Rights Offering Motion") [Docket No. 305].

---

[3] According to the Backstop Commitment Agreement dated October 7, 2009, the Backstop Investors are Blackrock Financial Management, Inc., Brigade Capital Management, LLC, Sankaty Advisors, LLC and Tinicum Lantern II L.L.C.

12691124

12. On December 14, 2009, the Equity Committee filed its Motion to Adjourn the hearings on the Disclosure Statement and Rights Offering Motion (the "Motion to Adjourn") [Docket No. 369]. The Debtors opposed the Motion to Adjourn [Docket No. 381].

13. On December 15, 2009, the *Ad Hoc* Noteholder Group filed a substantive joinder in the Debtors' objection to the Motion to Adjourn (the "AHNG Joinder") [Docket No. 383].

14. Just one day later, the *Ad Hoc* Noteholder Group filed its Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 1102(a) Dissolving the Official Committee of Equity Security Holders (the "Dissolution Motion") [Docket No. 391], seeking to disband the Equity Committee.

15. A hearing regarding approval of the Disclosure Statement and the Rights Offering Motion was held on December 18, 2009 (the "Disclosure Statement Hearing"). At the Disclosure Statement Hearing, counsel to the *Ad Hoc* Noteholder Group addressed the Court regarding the Dissolution Motion and requested a hearing date in early January. The Court noted that the Dissolution Motion centered on valuation and that given the tight timeline for discovery, a valuation fight prior to the confirmation hearing was an unnecessary distraction, since the valuation discussion is one of the key issues to be heard at the confirmation hearing. The Court noted that if the Dissolution Motion was heard prior to the confirmation hearing and was ultimately denied, the Equity Committee would have a legitimate basis for asking for a continuance of the confirmation hearing. Given

12691124

that possibility, the *Ad Hoc* Noteholder Group agreed to have the Dissolution Motion heard at the confirmation hearing on February 10, 2010.

16. Discovery has commenced in connection with the upcoming February 10th hearings. In that regard, the Equity Committee served discovery upon the Debtors, the *Ad Hoc* Noteholder Group and the Backstop Investors. The *Ad Hoc* Noteholder Group has served its own discovery request upon the Equity Committee.

17. On December 29, 2009, the *Ad Hoc* Noteholder Group filed its objection to the Equity Committee's application to employ legal professionals asserting that the hearing on the retention applications should be adjourned until confirmation (the "Retention Objection") [Docket No. 474].[4]

18. Upon information and belief, no other party, including the United States Trustee, the Debtors, the Official Committee of Unsecured Creditors (the "Creditors Committee"), the DIP lenders or the prepetition term lenders, has indicated - formally or informally- any support for the *Ad Hoc* Noteholder Group's blanket opposition to the Equity Committee's retention of professionals.

19. Recently, counsel to the Equity Committee contacted counsel for the *Ad Hoc* Noteholder Group requesting that the group file a Rule 2019 Statement. *See* Email from M. Machen to R. Shenfeld dated December 24, 2009, a copy of which is attached hereto as Exhibit D. Counsel for the *Ad Hoc* Noteholder Group neither acknowledged

---

[4] Through informal communications with counsel to the *Ad Hoc* Noteholder Group, the Equity Committee has learned that a similar objection will be made to the Equity Committee's application to retain and employ Jefferies & Co., Inc. as its financial advisor.

the request nor responded. The *Ad Hoc* Noteholder Group's unresponsiveness compels this Motion.

**RELIEF REQUESTED**

20. By this Motion, the Equity Committee respectfully requests that the Court enter an Order substantially in the form attached hereto as Exhibit E: (a) compelling the *Ad Hoc* Noteholder Group to comply with Rule 2019 by requiring the members of the *Ad Hoc* Noteholder Group to file a full and complete Rule 2019 Statement, (b) barring the participation of the *Ad Hoc* Noteholder Group in these cases until proper and full disclosures are made as required by Rule 2019, and (c) directing the Debtors to withhold further payments to or on behalf of the *Ad Hoc* Noteholder Group or its members pending compliance with Rule 2019.[5]

**BASIS FOR RELIEF**

**A. RULE 2019 IS A MANDATE, NOT A CHOICE.**

21. Rule 2019 "is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 165 (D.N.J. 2005) (quoting 9 *Collier on Bankruptcy* § 2019.01) (further citations omitted); *see also In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) ("*Northwest I*") (discussing the predecessor to Rule 2019, which "provided for disclosure of the personnel and activities of those acting in a representative capacity in order to help foster fair and equitable plans free from deception and

---

[5] The Equity Committee is not presently seeking the disgorgement of payments previously made to or on behalf of the *Ad Hoc* Noteholder Group, but reserves the right to do so, and to object to any further payments to or on behalf of such group. The Equity Committee further reserves its right to seek to designate the votes of the members of the *Ad Hoc* Noteholder Group on the Plan.

overreaching.") (internal citations omitted); *In re CF Holding Corp./Colt's Mfg. Co.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (Rule 2019 "was designed to cover entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent, but are not otherwise subject to control of the court.").

22. The mandate of Fed. R. Bankr. P. 2019 is unequivocal –

> *Every* entity or committee representing more than one creditor or equity security holder ... shall file a verified statement setting forth: (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity ... and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, ... the amounts of claims or interests owned by the entity, the members of the committee ... the times when acquired, the amounts paid therefor, and any sales or other disposition thereof.

Fed. R. Bankr. P. 2019 (emphasis added); *see also Northwest I*, 363 B.R. at 704 ("[Rule 2019] is long-standing, and there is no basis for failure to apply it as written.... [T]here is no shortage of cases applying it."). Thus, any entity seeking to represent one or more creditors or equity security holders (except committees appointed under Sections 1102 or 1114 of the Bankruptcy Code) must comply with the requirements of Rule 2019.

23. Notably, recent proposed amendments to Rule 2019 may result in even more stringent disclosures under this rule. In a recent case, Judge Walrath summarized the proposed amendments as follows:

> [T]he Advisory Committee has recommended changes to the Rule that require more, rather than less, disclosure. . . . The Rule . . . . has expanded the disclosures required to include information of the parties' 'disclosable economic interest' which is 'intended to be sufficiently broad to cover any

9

12691124

> economic interest that could affect the legal and strategic positions a stakeholder takes in a ... chapter 11 case.'

*In re Washington Mutual, Inc.*, No. 08-12229 (MFW), 2009 WL 4363539, at *7 (Bankr. D. Del. Dec. 2, 2009) ("*Washington Mutual*") (citing REPORT OF THE ADVISORY COMMITTEE ON BANKRUPTCY RULES, APP. B, COMMITTEE NOTES TO RULE 2019 (May 11, 2009), *available at* http://www.uscourts.gov/rules/proposed0809/BK_Rules_Forms_Ame ndments.pdf). The move towards a heightened duty under Rule 2019 underscores the importance of Rule 2019 to the bankruptcy process.

### B. THE AD HOC NOTEHOLDER GROUP IS SUBJECT TO RULE 2019.

24. Rule 2019 applies with equal force to an informal group of creditors, such as the *Ad Hoc* Noteholder Group in these cases, acting in concert and through designated counsel. *See Washington Mutual*, 2009 WL 4363539, at *3 ("Under the plain language of Rule 2019 ... the Court finds that although the [Noteholders Group] call themselves a Group, they are in fact acting as an *ad hoc* committee or entity representing more than one creditor. The [Noteholders Group], therefore, must comply with Rule 2019."); *Northwest I*, 363 B.R. at 703 ("Where an *ad hoc* committee has appeared as such, the committee is required to provide the information plainly required by Rule 2019 on behalf of each of its members."); *City of Lafayette, Colorado v. Oklahoma P.A.C. First Ltd. P'ship (In re Oklahoma P.A.C. First Ltd. P'ship)*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990) (because Rule 2019 provides an exception to any official committee of creditors or other interested parties appointed pursuant to § 1102 of the Bankruptcy Code, "its application must be to *informal* committees of creditors.") (emphasis in original).

25. Recent cases, in which courts have discussed Rule 2019, demonstrate that the *Ad Hoc* Noteholder Group clearly falls within its purview. For example, the *Northwest I* court held that members of an *ad hoc* committee of shareholders who had appeared in the case as a "formal organization of a group of creditors holding similar claims, who have elected to consolidate their collection efforts" were plainly required by Rule 2019 to make the disclosures required by the rule. 363 B.R. at 703 (quoting *Wilson v. Valley Electric Membership Corp.*, 141 B.R. 309, 314 (E.D. La. 1992)). The *Northwest I* court also explained the significance of Rule 2019 in the context of *ad hoc* committees: "*Ad hoc* or unofficial committees play an important role in reorganization cases. By appearing as a 'committee' of shareholders, the members purport to speak for a group and implicitly ask the court and other parties to give their positions a degree of credibility appropriate to a unified group with large holdings." 363 B.R. at 703.

26. Similarly, in *Washington Mutual*, Judge Walrath discussed the continuing importance and relevance of Rule 2019 in the present day where short-selling is prominent and the abundance of derivative products permit creditors to take multiple stakes in the capital structures of debtors. 2009 WL 4363539, at *7.[6] Judge Walrath noted:

> Such varied holdings have the potential to create complex, conflicting incentives for large creditors. In addition, collective action by creditors through the use of ad hoc committees or groups allows creditors to utilize other group members' holdings to obtain a greater degree of influence in a bankruptcy case than single creditors acting alone.

---

[6] For the Court's Convenience, a copy of Judge Walrath's recent and pertinent decision in *Washington Mutual* is attached hereto as Exhibit F.

11

12691124

*Id.* This rings true in these cases, where certain members of the *Ad Hoc* Noteholder Group are also shareholders or are (or may be) otherwise involved in the Debtors' capital structure.[7]

27. The *Ad Hoc* Noteholder Group has been a major, and at times, the principal voice in these cases. They have been very active in the case (well before the filings even, as evidenced by the Pre-Negotiated Plan); have filed responsive pleadings; have furthered their own agenda in the cases (which has lacked any outwards support from the other major constituencies in the cases, namely the Debtors and the Creditors Committee); and have propounded separate discovery against the Equity Committee. The *Ad Hoc* Noteholder Group will undoubtedly remain an active and engaged party through the end of these cases.

28. Importantly, for purposes of Rule 2019, the *Ad Hoc* Noteholder Group acts through a single set of professionals (Milbank, Pachulski and Rothschild) and presents a unified position and voice to the Court and other parties. The *Ad Hoc* Noteholder Group has repeatedly asserted that it represents a collective group of noteholders rather than individual noteholders' interests. For example, in the AHNG NoA, counsel to the *Ad Hoc* Noteholder Group indicated that they are appearing in these cases as "counsel for the holders of Accuride Corp.'s 8.5% Senior Subordinated Notes due 2015." *See* Notice of Appearance and Request for Service of Notices and Papers by Milbank, Tweed, Hadley & McCloy LLP As Counsel for *Ad Hoc* Noteholder Group [Docket No. 26]. Counsel for the *Ad Hoc* Noteholder Group has also indicated that he

---

[7] For example, Tinicum Incorporated is a Supporting Noteholder, member of the *Ad Hoc* Noteholder Group, a Backstop Investor (or an affiliate thereof) ***and*** a major shareholder holding approximately 6.5% of the Debtors' equity as of the Petition Date.

would accept discovery on behalf of the group, but not on behalf of the noteholders individually. *See* Email from D. Perry to M. Machen dated December 22, 2009, attached hereto as Exhibit G. Similarly, in the AHNG Joinder, the Dissolution Motion and the Retention Objection, the *Ad Hoc* Noteholder Group have been acting collectively.

29. In *Northwest I*, the bankruptcy court similarly discussed a law firm's representation of an *ad hoc* committee. In holding that the firm was required to file a Rule 2019 statement, the court noted that the following factors supported that conclusion: the firm's "notice of appearance was as a committee, and it is the 'Ad Hoc Committee' that has moved for the appointment of an official shareholders' committee and has been actively litigating discovery issues in numerous hearings and conferences before the Court." 363 B.R. at 703. The court further noted that the firm did not claim to represent the individual interests of any committee members but that it took instructions from the committee as a whole and represented one entity for purposes of Rule 2019. *Id.* These factors equally apply to the *Ad Hoc* Noteholder Group in these cases, who also should be required to comply with the mandate of Rule 2019.

30. At bottom, the *Ad Hoc* Noteholder Group should not be permitted to enjoy the many benefits, such as enhanced credibility and increased influence, that come with acting as a unified *ad hoc* committee without being subject to the disclosure requirements of 2019. *See In re Northwest Airlines Corp.*, 363 B.R. 704, 707 (Bankr. S.D.N.Y. 2007) ("*Northwest II*") ("[Rule 2019] requires unofficial committees that play a significant public role in reorganization proceedings and enjoy a level of credibility and influence consonant with group status to file a statement concerning certain information.").

C.  **THE COURT AND OTHER PARTIES IN INTEREST ARE ENTITLED TO KNOW WHOSE EXPENSES ARE BEING PAID BY THE ESTATES.**

31. It also bears mention that the estates are currently bearing the costs of the various professionals retained by the *Ad Hoc* Noteholder Group. These include professionals from the respected, capable and *not inexpensive* firms of Milbank, Pachulski and Rothschild. The DIP Budget shows that the Debtors have budgeted ***over $4 million*** for the Noteholders' professionals from approximately September 1, 2009 through April 2010.[8] The Court, the Equity Committee and other parties in interest are entitled to know the parties who are being compensated for these (and perhaps other) expenses and what purpose the remuneration really serves. Pending compliance with Rule 2019, the Debtors should be directed not to make any more payments to or on behalf of the *Ad Hoc* Noteholder Group or its members.

D.  **THE *AD HOC* NOTEHOLDER GROUP SHOULD BE BARRED FROM PARTICIPATING FURTHER IN THIS CASE UNTIL IT COMPLIES WITH RULE 2019.**

32. Until the *Ad Hoc* Noteholder Group complies with its obligations pursuant to Rule 2019, the Court should prohibit the *Ad Hoc* Noteholder Group from further participation in these cases. Rule 2019 provides that if a committee fails to comply with its mandate, the court may "refuse to permit that ... committee ... to be heard further or to intervene in the case" or may "hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied

---

[8] The Equity Committee has twice requested that the Debtors provide a copy of Rothschild's engagement letter to determine the terms and scope of fees to be paid to Rothschild. Counsel for the Debtors indicated that the Debtors' general counsel was unavailable during the week between Christmas and New Year's and therefore they could not produce the Rothschild engagement letter. In an effort to be responsive to the Equity Committee's request, however, Debtors' counsel requested Noteholders' counsel to provide the same. Noteholders' counsel did not respond (or if such response was made, counsel to the Equity Committee was not copied). On January 4. 2010, counsel to the Equity Committee reached out directly to counsel for the Noteholders (Daniel Perry). Mr. Perry advised that the request was "under consideration."

14
12691124

with this rule or with § 1125(b) of the Code." Fed. R. Bankr. P. 2019(b)(1); *see also In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. at 390 ("If there is a failure to comply with the disclosure provisions of Bankruptcy Rule 2019, the Court may, *inter alia*, refuse to permit the entity acting on behalf of the parties from being heard further in a Chapter 11 case.").

33. Additionally, several courts have imposed other restrictions against entities who have failed to comply with Rule 2019. *See Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989) (refusing to allow class proofs of claim filed by counsel who failed to comply with Rule 2019); *In re North Bay General Hosp., Inc.*, 404 B.R. 443, 455-56 (Bankr. S.D. Tex. 2009) (prohibiting an unsecured creditor agent from representing the creditors for failure to comply with Rule 2019); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 852-53 (Bankr. S.D.N.Y. 1989) (denying a purported agent's motion to intervene for failure to fully comply with Rule 2019); *In re Vestra Indus., Inc.*, 82 B.R. 21, 22-23 (Bankr. D.S.C. 1987) (disallowing a union's proofs of claim for failing to comply with Rule 2019 when representing more than one creditor). The harsh consequences for failure to comply with Rule 2019 demonstrate the significance that courts place on full disclosure and fairness in bankruptcy proceedings.

34. Due to the pivotal role that the *Ad Hoc* Noteholder Group has taken on in these cases to date, the fact that the estates are burdened with the *Ad Hoc* Noteholder Group's professional (and perhaps other) costs, and its likely increased involvement in attempting to force confirmation of the Plan over the objections of the Equity Committee, it is imperative that the *Ad Hoc* Noteholder Group disclose to the Court and all parties in

interest its actual economic interests and incentives through a complete and proper filing of a verified statement as required by Rule 2019.

## NOTICE

35. The Equity Committee has provided notice of this Motion via United States Mail and electronic mail to (a) the U.S. Trustee, (b) counsel to the Debtors, (c) counsel the Creditors' Committee, (d) counsel to the *Ad Hoc* Noteholder Group; (e) the Debtors' lenders; and (f) all parties requesting notices pursuant to Bankruptcy Rule 2002 via hand delivery to the local parties and United States Mail to the others. The Equity Committee submits that, in light of the nature of the relief requested herein, no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Equity Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit E, (i) compelling the *Ad Hoc* Noteholder Group to comply with Bankruptcy Rule 2019 by filing a Rule 2019 Statement; (ii) barring its further participation in these cases until it files its Rule 2019 Statement; (iii) directing the Debtors not to make any further payments to or on behalf of the *Ad Hoc* Noteholder Group or its members pending the group's compliance with Rule 2019; and (iv) granting such other and further relief as is just and proper.

Date: January 4, 2010
Wilmington, Delaware

BAYARD, P.A.
/s/ *Justin R. Alberto*
Charlene Davis (No. 2336)
Justin R. Alberto (No. 5126)
222 Delaware Avenue, 9th floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

12691124

-and-

SONNENSCHEIN NATH &
ROSENTHAL LLP
Peter D. Wolfson
1221 Avenue of the Americas
New York, NY 10022
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

-and-

Robert E. Richards
Monika J. Machen
Stefanie Wowchuk
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

*Proposed Counsel for the Official
Committee of Equity Security
Holders of Accuride Corp., et al.*