# EXHIBIT I

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ACCURIDE CORPORATION,<br>et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-13449 (BLS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 496 and 542<br><br>Hearing Date: January 20, 2010 at 10:00 a.m. |

## REPLY OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS IN SUPPORT OF ITS MOTION FOR AN ORDER (A) COMPELLING THE *AD HOC* NOTEHOLDER GROUP TO COMPLY WITH FED. R. BANKR. P. 2019; (B) PROHIBITING FURTHER PARTICIPATION IN THESE CASES BY THE *AD HOC* NOTEHOLDER GROUP PENDING COMPLIANCE WITH FED. R. BANKR. P. 2019; AND (C) DIRECTING THE DEBTORS TO WITHHOLD FURTHER PAYMENTS TO OR ON BEHALF OF SUCH GROUP PENDING COMPLIANCE WITH FED. R. BANKR. P. 2019

The Official Committee of Equity Security Holders (the "Equity Committee") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby submits this reply (the "Reply") in support of its Motion for an Order (A) Compelling the *Ad Hoc* Noteholder Group to Comply with Fed. R. Bankr. P. 2019; (B) Prohibiting Further Participation in These Cases by the *Ad Hoc* Noteholder Group Pending Compliance with Fed. R. Bankr. P. 2019; and (C) Directing the Debtors to Withhold

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Accuride Corporation, a Delaware corporation (9077); Accuride Cuyahoga Falls, Inc., a Delaware corporation (9556); Accuride Distributing, LLC, a Delaware limited liability company (3124); Accuride EMI, LLC, a Delaware limited liability company (N/A); Accuride Erie L.P., a Delaware limited partnership (4862); Accuride Henderson Limited Liability Company, a Delaware limited liability company (8596); AKW General Partner L.L.C., a Delaware limited liability company (4861); AOT Inc., a Delaware corporation (3088); Bostrom Holdings, Inc., a Delaware corporation (9282); Bostrom Seating, Inc., a Delaware corporation (7179); Bostrom Specialty Seating, Inc., a Delaware corporation (4182); Brillion Iron Works, Inc., a Delaware corporation (6942); Erie Land Holding, Inc., a Delaware corporation (8018); Fabco Automotive Corporation, a Delaware corporation (9802); Gunite Imperial Group Holding Corp. -2, a Delaware corporation (4009); Imperial Group, L.P., a Delaware limited partnership (4012); JAII Management Company, a Delaware corporation (N/A); Transportation Technologies Industries, Inc., a Delaware corporation (2791); and Truck Components Inc., a Delaware corporation (5407).

Further Payments to or on Behalf of Such Group Pending Compliance with Fed. R. Bankr. P. 2019 [Docket No. 496] (the "Motion to Compel"). In support of this Reply, the Equity Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The mandate of Fed. R. Bankr. P. 2019 ("Rule 2019") is clear – *"every entity or committee representing more than one creditor"* must file a verified statement that complies with the requirements of Rule 2019. In order for Rule 2019 to apply, two prongs must be satisfied. First, there must be an "entity" or "committee." Second, such entity or committee must "represent" more than one creditor. Both prongs are satisfied here.

2. Rule 2019 applies, on its face, to the *Ad Hoc* Noteholder Group, notwithstanding their tortured reading to the contrary. First, the *Ad Hoc* Noteholder Group is both an "entity" and a "committee". It is an "entity" because it is an organization with a distinct and separate existence from its members (the "Members"). It is a "committee" because it is an affiliation of creditors. Importantly, just *one day* prior to the Petition Date, the *Ad Hoc* Noteholder Group identified itself as an "*Ad Hoc Committee* of Noteholders" and executed documents purporting to be such.

3. Second, the *Ad Hoc* Noteholder Group "represents" its constituent Members. The *Ad Hoc* Noteholder Group is the mouthpiece through which its Members speak to the Court in pleadings and at hearings. It is the *Ad Hoc* Noteholder Group with whom parties must negotiate (and not the individual Members). It is the *Ad Hoc* Noteholder Group that advocates the collective interests of its Members. It is

disingenuous to suggest that the *Ad Hoc* Noteholder Group does not *represent* its Members.

4. To the extent the *Ad Hoc* Noteholder Group is taking the position that it has *de facto* complied with Rule 2019, it is incorrect. Past, partial, and outdated disclosures regarding membership and holdings simply will not do. Rule 2019 entitles the Court and parties-in-interest to know the identities of, and information about, unofficial groups that play substantial roles in Chapter 11 cases and enjoy increased credibility and influence consummate with that group's status. The *Ad Hoc* Noteholders Group must comply with Rule 2019. Moreover, the onus does not fall on the Court and other parties to piece together the claims and interests of the Members.

5. At bottom, the *Ad Hoc* Noteholder Group, to the extent that they seek to receive the benefits of participating in these cases, should be required to clearly identify themselves to ensure that a fair and transparent process is in place. As things currently stand, the *Ad Hoc* Noteholder Group has all the benefits of an official committee and none of the burdens. Its Members can play an elaborate shell game - appearing and disappearing across the Debtors' capital structure - without any consequence (unlike members of official committees who are required to identify themselves and disclose both debt and equity stakes in the debtor to the United States Trustee); Members of the *Ad Hoc* Noteholder Group and its professionals can collect significant (and perhaps excessive) fees and expenses from the estates (without any review by the Court, United States Trustee or other parties-in-interest); and the group can launch an attack against other constituents (but need not fully identify themselves or their claims interests). It is

hard to believe that this is the fair and transparent process envisioned by crafters of the bankruptcy laws.

## REPLY

A. **RULE 2019 APPLIES TO THE *AD HOC* NOTEHOLDER GROUP.**

    6. Bankruptcy Rule 2019 reads, in pertinent part, as follows:

> (a) *Data Required.* In a . . . chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code, every entity or committee representing more than one creditor or equity security holder . . . shall file a verified statement setting forth
>
> > 1. the name and address of the creditor or equity security holder;
> >
> > 2. the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition;
> >
> > 3. a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and
> >
> > 4. with reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee, the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof.
>
> The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders. A supplemental statement shall be filed promptly, setting forth any material changes in the facts contained in the statement filed pursuant to this subdivision.

Fed. R. Bankr. P. 2019. The *Ad Hoc* Noteholder Group clearly fits within the scope of Rule 2019. The *Ad Hoc* Noteholder Group is (a) an "entity" and a "committee" and (b) represents more than one creditor.[2] Where a statute's language is plain, the "sole function of the courts is to enforce it according to its terms." *See U.S. v. Ron Pair Enters.*, 489 US 235, 241 (1989).

### 1. *The Ad Hoc Noteholder Group is An "Entity" and a "Committee".*

7. The *Ad Hoc* Noteholder Group is an "entity" for purposes of Rule 2019. As explained by Judge Walrath in *Washington Mutual*,

> The Bankruptcy Code defines the term "entity" to include any "person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15). The term "person" is defined to include an "individual, partnership, and corporation." 11 U.S.C. § 101(41). By use of the word "includes," the definition of "entity" is non-exclusive. Black's Law Dictionary defines an "entity" as "an organization (such as a business or a governmental unit) that has a legal identity apart from its members." *Black's Law Dictionary* 573 (8th ed. 2004). *See also Merriam-Webster's Collegiate Dictionary* 387 (10th ed. 1997) (defining "entity" as "(1)(a) being, existence; especially: independent, separate, or self-contained existence (b) the existence of a thing as contrasted with its attributes; (2) something that has separate and distinct existence and objective or conceptual reality").

*In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW), 2009 WL 4363539, n.7 Bankr. D. Del. Dec. 2, 2009)("*Washington Mutual*").[3] The *Ad Hoc* Noteholder Group "is an 'entity' within the meaning of Rule 2019 because it is an organization that has an identity apart from its individual members." *See id.*

8. The *Ad Hoc* Noteholder Group is also a "committee". Like the *Ad Hoc* committee in *Washington Mutual*, the *Ad Hoc* Noteholder Group "possesses virtually all

---
[2] Since the Ad Hoc Noteholder Group has failed to make any meaningful disclosures, it cannot be determined if it also represents more than one equity security holder.
[3] For the Court's convenience, a copy of the excerpted hearing transcript resulting in Judge Walrath's decision is attached hereto as Exhibit A.

the characteristics typically found in an *ad hoc* committee, save the name. The [*Ad Hoc* Noteholder Group] consists of multiple creditors holding similar claims. The Members of the [*Ad Hoc* Noteholder Group] filed pleadings and appeared in these chapter 11 cases collectively, not individually. The [*Ad Hoc* Noteholder Group] also retained counsel, which takes it instructions from the Group as a whole." *Washington Mutual*, 2009 WL 4363539, *3.

9. Indeed, the Court need not look further than the very agreement that the *Ad Hoc* Noteholder Group purports to be bound by to reach the determination that the *Ad Hoc* Noteholder Group is in fact a "committee." Section 2(b) of the plan support agreement executed by the *Ad Hoc* Noteholder Group (the "Noteholder Plan Support Agreement") provides, in pertinent part, "The effectiveness of this Agreement shall be subject to the satisfaction of the following conditions . . . (b) the receipt by Accuride . . . of counterparts hereof duly executed and delivered by Noteholders who are Members of the *Ad Hoc* ***Committee*** of Noteholders [.]" *Noteholder Plan Support Agreement*, attached hereto as Exhibit B, at 3.

10. Further, in the First Day Affidavit of Mr. James Woodward (cited by the *Ad Hoc* Noteholder Group as evidence of *its* disclosures to the Court (Obj. at ¶10)), the Debtor refers to negotiations with the "*Ad Hoc* ***Committee***" of certain noteholders. Woodward Aff., attached hereto as Exhibit C, at ¶¶37-9. Upon information and belief, the pre-petition *Ad Hoc* Committee consists of virtually the same Members who now comprise the *Ad Hoc* Noteholder Group. *See* ¶22, *infra*. It is far too convenient for the *Ad Hoc* Noteholder Group to argue that as of the Petition Date, they ceased to be a "committee". Given that this is a pre-negotiated plan and the Debtors rode in with the *Ad*

*Hoc* Noteholder Group as their "white horse", the Members presented themselves as a *committee* to the Debtors and other constituents, the Members consented to the Debtors' description of them as a *committee*, and allegedly executed documents identifying themselves as a *committee*, the *Ad Hoc* Noteholder Group should be estopped from now arguing that they are not a "committee".

### 2. The Ad Hoc Noteholder Group "Represents" Multiple Creditors.

11. The *Ad Hoc* Noteholder Group "represents" its constituent Members (and arguably, the 70% of supporting noteholders). As explained by Judge Walrath in *Washington Mutual*,

> [a]lthough not defined in the Bankruptcy Code, "representing" requires that one simply act on behalf of another. *See Black's Law Dictionary* 1328 (8th ed. 2004) (defining "representative" as "[o]ne who stands for or acts on behalf of another [the owner was the football team's representative at the labor negotiations]. See agent."); *Merriam-Webster's Collegiate Dictionary* 993 (10th ed. 1997) (defining "represent" as "to take the place of in some respect [or] to act in the place of or for usually by legal right"). That is exactly the situation here. The WMI Noteholders Group counsel has repeatedly filed papers and made appearances at various hearings representing the constituent members as part of the WMI Noteholders Group. Accordingly, the WMI Noteholders Group was "representing more than one creditor or equity security holder."

*Washington Mutual*, 2009 WL 4363539, at n.8.

12. Individual Members have not appeared separately in this case, notwithstanding their large stake in the case. Rather, they have chosen to allow the *Ad Hoc* Noteholder Group to stand in their stead, i.e., serve as *their representative* in the case. The *Ad Hoc* Noteholder Group is the single voice of these collective creditors and it is this voice that speaks to the Court and to the other parties. It is the *Ad Hoc* Noteholder Group, and not any single Member, that advocates the collective interests of the constituents. Accordingly, the *Ad Hoc* Noteholder Group "represents" its Members.

### 3. *The Weight of the Law Mandates Disclosure.*

13. The Equity Committee cited to a number of reported decisions in which various courts, *including bankruptcy courts in this district*, have found that the requirements of Rule 2019 apply to informal or *ad hoc* committees and entities appearing and operating in a bankruptcy case. *See Washington Mutual*, 2009 WL 4363539; *In re Northwest Airlines Corp.*, 363 B.R. 701 (Bankr. S.D.N.Y. 2007)("*Northwest*"); *City of Lafayette, Colorado v. Oklahoma P.A.C. First Ltd. P'ship (In re Oklahoma P.A.C. First Ltd. P'ship)*, 122 B.R. 387 (Bankr. D. Ariz. 1990).

14. The *Ad Hoc* Noteholder Group ignores the overwhelming weight of these recent, published decisions and instead hitches its argument to a bench ruling[4] by Judge Sontchi in which he denied a motion seeking to compel an *Ad Hoc* committee to comply with Rule 2019. *In re Premier Int'l Holdings, Inc.* Case No. 09-12019 (CSS) (Bankr. D. Del. Jan. 8, 2010)("*Premier*"). In articulating his reasoning for the denial, Judge Sontchi concluded that the term "committee" meant a "subset of a larger group authorized by the larger group to act on its behalf" and found that not to be the situation with the *Ad Hoc* committee in *Premier*. *See Premier* Tr. at 68-69.

15. In an effort to shoehorn itself into the contours of that decision, the *Ad Hoc* Noteholders Group claims that it does not represent any entity other than its Members. However, the *Ad Hoc* Noteholder Group's *own* pleading suggest that it has the potential to act for Members other than the ones identified in the AHNG NoA.[5] Obj. at ¶17; *see also Washington Mutual* Tr. at 71:22-5 ("THE COURT: But isn't that the

---

[4] Although Judge Sontchi indicated he would release an opinion, no such opinion has been published to date. *Premier* Tr. at 70:11-22.
[5] Capitalized terms not defined herein shall bear the meaning ascribed to them in the Motion to Compel.

problem? There have bee [sic] people in and out of the group, and that's not been disclosed as far as who was in the group. You're purporting to represent a group."). Specifically, the *Ad Hoc* Noteholder Group acknowledges that under the Noteholder Plan Support Agreement, "a signatory may transfer its Subordinated Notes." Obj. at ¶17. It is possible, therefore, that a subsequent holder of the transferred notes may be represented by the *Ad Hoc* Noteholder Group (or believe that the *Ad Hoc* Noteholder Group is representing them in connection with its interests). Further, in several of the *Ad Hoc* Noteholder Group's pleadings, it fails to identify the Members of the "*Ad Hoc* Noteholder Group".[6] Unless one were to closely follow the labyrinth of pleadings filed by the Debtors and Milbank (as mapped out in Section II.A of the Objection), it would be difficult for an ordinary person (including an individual noteholder) to determine exactly *who* the *Ad Hoc* Noteholder Group represents and easy for such person to conclude that the *Ad Hoc* Noteholder Group in fact represents *all* noteholders.

---

[6] See e.g.,

(i) Joinder of *Ad Hoc* Noteholder Group in Objection of the Debtor to Motion of the Official Committee of Equity Security Holders to Adjourn Hearings on the Motions of the Debtors (I) For Entry of an Order (A) Approving the Disclosure Statement, Ect. and (II) For an Order (A) Authorizing the Debtors to Conduct the Rights Offering and (B) Approving Registration Agreement, Subscription Agreement and Subscription Form [Docket No. 383];

(ii) Motion of the *Ad Hoc* Noteholder Group for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 1102(a) Dissolving the Official Committee of Equity Security Holders [Docket No. 391];

(iii) Objections of the *Ad Hoc* Noteholder Group to (I) Application of the Official Committee of Equity Security Holders to Retain and Employ Sonnenschein Nath & Rosenthal LLP as Counsel Effective as of November 19, 2009 and (II) Application of the Official Committee of Equity Security Holders for an Order Under Bankruptcy Code Sections 328(a) and 1103(a) and Bankruptcy Rules 2014(a) and 2016(b) Approving the Employment and Retention of Bayard, P.A. as Delaware Counsel for the Official Committee of Equity Security Holders *Nunc Pro Tunc* to November 19, 2009 [Docket No. 474]; and

(iv) Objections of the *Ad Hoc* Noteholder Group to the Official Committee of Equity Security Holders' Application for Order Under Sections 328 and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014 Approving Retention of Jefferies & Company, Inc. as Financial Advisors to the Committee, Effective as of November 19, 2009, and Granting Waiver of Compliance with Certain Requirements under Del. Bankr. LR 2016-2 [Docket No. 523].

16. Even if the *Ad Hoc* Noteholder Group is correct that it does not represent any creditors *other* than its constituent Members previously identified in the Ad Hoc Noteholder Group NoA, whether it represents such additional creditors is immaterial to the applicability of Rule 2019. Although the *Premier* decision (which has already been appealed)[7] placed great weight on this factor, it is in fact an extremely narrow reading of Rule 2019. *See* Premier Tr. at 68:22 ("I read committee under Rule 2019 narrowly"). This "narrow" interpretation effectively guts the purpose of Rule 2019 and contrasts starkly not only with the decisions in *Northwest* and *Washington Mutual*, but the recent proposed amendments to Bankruptcy Rule 2019 which, if enacted, could result in more stringent disclosures. *See* Mot. to Compel at ¶23.

**B.  THE COURT AND OTHER PARTIES-IN-INTEREST ARE ENTITLED TO KNOW THE IDENTITIES OF THE PARTIES PARTICIPATING IN THE BANKRUPTCY PROCESS; FAILURE TO PROVIDE THIS INFORMATION CREATES OPPORTUNITY FOR IMPEDIMENT.**

17. The *Ad Hoc* Noteholder Group admits that noteholders subject to the Noteholder Plan Support Agreement have been trading their positions since the bankruptcy filing. Obj. at ¶17. Thus, it is possible that the Members of the *Ad Hoc* Noteholder Group for whom Milbank appeared at the inception of the case are no longer Members of the *Ad Hoc* Noteholder Group. The *Ad Hoc* Noteholder Group submit that the Court should not be bothered by the undisclosed post-petition trading because the trading has been disclosed to the *Debtors*. *Id*. This position is clearly wrong. By hiding behind the cloak of the "*Ad Hoc* Noteholder Group", Members are able to take advantage of their undisclosed positions and impede the ability of other participants in the case.

---

[7]  *In re Premier Int'l Holdings*, Case No. 09-12019 (CSS), Notice of Appeal [Docket No. 1405] (D. Del. January 15, 2010).

Furthermore, as described below, full disclosure could avoid critical misunderstandings in a case where every minute counts.

18. For example, the Equity Committee recently proposed an alternative financing transaction (the "Equity Committee Proposal") for the Debtors through an alternative financier (the "Alternative Financier"). Upon information and belief, during that process, Members of the *Ad Hoc* Noteholder Group, who are also alleged to be prepetition term lenders, sought to preclude the Alternative Financier from proceeding with the Equity Committee Proposal arguing that an *affiliate* of the Alternative Financier was a signatory to the plan support agreement executed by the Debtors' prepetition lenders, thereby binding the Alternative Financier and prohibiting it from pursuing the Equity Committee Proposal. Fortunately, the Alternative Financier has nevertheless agreed to proceed with the Equity Committee Proposal and has in fact submitted an indicative term sheet to the Equity Committee for inclusion in its alternative proposal.[8]

19. The foregoing example proves the importance of disclosure in the bankruptcy process. If "entities" representing multiple creditors complied with their disclosure requirements under Rule 2019, situations like the one described above could be averted - or at least recognized and addressed - from the start.

C. **THE *AD HOC* NOTEHOLDER GROUP'S DISCLOSURES TO DATE ARE INSUFFICIENT.**

20. The *Ad Hoc* Noteholder Group asserts that it and the Debtors have made disclosures identifying the Members of the group. Obj. at ¶8. Specifically, the *Ad Hoc* Noteholder Group points to the following "disclosures": (a) the Notice of Appearance pursuant to which the law firm of Milbank appears on behalf of the *Ad Hoc* Noteholder

---

[8] The Equity Committee Proposal has been submitted to the Debtors and upon information and belief, is under consideration.

Group; (b) an unexecuted version of the Noteholder Plan Support Agreement that does not list the names of the signatories; (c) the First Day Affidavit of James Woodward (the "Woodward Affidavit"); (d) the DIP Financing Motion; and (e) the Commitment Agreement.

21. Yet review of these documents actually raises more questions. For example, a review of the AHNG NoA and the Woodward Affidavit shows an inconsistency in the identities of the group. The AHNG NoA (dated October 8, 2009) identifies the group as (a) BlackRock Financial Management, Inc., (b) Brigade Capital Management, LLC, (c) Canyon Capital Advisors LLC, (d) ***Principal Global Investors***, (e) Sankaty Advisors, LLC and (f) Tinicum Incorporated. The Woodward Affidavit (also dated October 8, 2009) identifies the "*Ad Hoc Committee*" as of the Petition Date as being (i) Blackrock Financial Management Inc., (ii) Brigade Capital Management, LLC, (iii) Canyon Capital Advisors LLC, (iv) Principal Global Investors LLC, (v) Sankaty Advisors, LLC, (vi) ***Prospect Funding I, LLC*** and (vii) Tinicum Incorporated. Woodward Aff. at n. 8. The Noteholder Plan Support Agreement is altogether silent on the identity of the Members.

22. What's more, the Objection (despite being 28 pages long) still leaves unclear who is currently a member of the *Ad Hoc* Noteholder Group. See Obj. at ¶9 (identifying the Members of the group as the entities listed in the *Ad Hoc* Noteholder Group NoA); *but see* Obj. at ¶17 (noting that membership has changed since the Petition Date and that only the Debtors have been advised of such changes).

23. Finally, while these documents may provide the aggregate holding of the Members, Rule 2019 requires granular detail from *each* creditor and/or equity security holder.

24. Even if the *Ad Hoc* Noteholder Group's disclosures were sufficient (which they are not), such method of disclosure does not fulfill the statutory mandate of Rule 2019. Rule 2019 requires a <u>verified statement</u> prepared <u>by</u> the entity or committee. Fed. R. Bankr. P. 2019(a). Rule 2019 does not contemplate that the Court and parties-in-interest should scour the pleadings by the party *and others* to cobble together the nature and extent of the group's claims and interests in the case. Not surprisingly, the *Ad Hoc* Noteholder Group cannot cite to a *single* point of authority to support such a proposition. To the contrary, Rule 2019 puts the burden squarely on the subject entity or committee to disclose the stake of each creditor or equity holder. Fed. R. Bankr. P. 2019(a) ("every *entity or committee* representing more than one creditor or equity security holder. . . . *shall file* a verified statement).

25. The *Ad Hoc* Noteholder Group claims that because "the Debtors have full and unfettered access to all non-confidential information regarding the Members' claims and interests in this Case" (Objection at ¶ 41), further disclosure is unnecessary. Disclosure to only the Debtors does not satisfy Rule 2019. Only disclosure to the Court and other parties in interest is acceptable.

D. **THE *AD HOC* NOTEHOLDERS GROUP NEED NOT OPERATE PURSUANT TO AN INSTRUMENT IN ORDER TO BE SUBJECT TO RULE 2019.**

26. The *Ad Hoc* Noteholders Group maintains that Bankruptcy Rule 2019 cannot apply to it because its conduct in the case is not governed by an instrument. ¶36. Assuming for the sake or argument that no such instrument exists, it is irrelevant.

Bankruptcy Rule 2019 does not require that the entity or committee be empowered to act through an instrument; rather, it simply provides that the committee or entity include "a copy of the instrument, if any" with the 2019 statement. Fed. R. Bankr. P. 2019 (emphasis added). If Rule 2019 were read in the manner suggested by the *Ad Hoc* Noteholder Group, the words "if any" would be superfluous.

### E. THE PURPOSES OF BANKRUPTCY RULE 2019 WILL BE SERVED IF THE *AD HOC* NOTEHOLDER GROUP IS REQUIRED TO CONFORM WITH ITS REQUIREMENTS.

27. The *Ad Hoc* Noteholder Group suggests that requiring it to comply with Bankruptcy Rule 2019 is not consistent with the policy behind it. To formulate this argument they look backward to one impetus for a predecessor rule, rather than looking forward to the existing case law decisions and potential expansion of disclosure requirements in proposed amendments to Rule 2019. Its view is not the prevailing view and certainly not consistent with the reported decisions in *Northwest* and *Washington Mutual* or other recent changes in the Bankruptcy Rules favoring *more*, not less, disclosure. *See e.g.*, Fed. R. Bankr. P. 2015.3 (requiring periodic reporting on entities that are not publicly traded or a debtor in chapter 11 and in which the debtor holds a substantial or controlling interest) (added in 2008).

**[Remainder of Page Intentionally Left Blank]**

## CONCLUSION

WHEREFORE, the Equity Committee respectfully requests that this Court enter an order substantially in the form of that attached to the Motion to Compel and granting such other and further relief as is just and proper.

Date: January 18, 2010
Wilmington, Delaware

BAYARD, P.A.

/s/ *Justin R. Alberto*
Charlene Davis (No. 2336)
Justin R. Alberto (No. 5126)
222 Delaware Avenue, 9th floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

-and-

SONNENSCHEIN NATH &
ROSENTHAL LLP
Peter D. Wolfson
1221 Avenue of the Americas
New York, NY 10022
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

-and-

Robert E. Richards
Monika J. Machen
Stefanie Wowchuk
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

*Proposed Counsel for the Official Committee of Equity Security Holders of Accuride Corp., et al.*