## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ACCURIDE CORPORATION, <u>et al.</u> | ) | Case No. 09-13449  (BLS) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related to Docket Nos. 1121, 1145, |
| | ) | and 1146 |
| _____ | ) | |

Frederick B. Rosner
The Rosner Law Group LLC
1000 N. West Street, Suite 1200
Wilmington, DE 19801

Peter M. Levine
99 Park Avenue, 3rd Floor
New York, NY 10016

Michael R. Nestor
Kara Hammond Coyle
Andrew L. Magaziner
Young Conaway Stargatt & Taylor,
LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

David S. Heller
Caroline A. Reckler
Kevin C. May
Latham & Watkins LLP
233 South Wacker Drive, Suite 5800
Chicago, IL 60606

*Counsel for New Generation Advisors,
LLC*

*Counsel for the Reorganized Debtors*

## OPINION[1]

Before the Court is a motion (the "Motion") [Docket No. 1121] of New Generation

Advisors, LLC ("New Generation" or the "Movant") to enforce the third amended joint plan of

reorganization for Accuride Corporation ("Accuride" or the "Debtor") for the purpose of

---

[1]      Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to
this contested matter by Rule 9014(c), this Opinion constitutes findings of fact and conclusions
of law.

1

ordering the Debtor to make an additional distribution to New Generation.  The Motion is

opposed by the Debtor.  For the reasons stated below, the Court will deny the Motion.

## I.  BACKGROUND

On October 8, 2009 (the "Petition Date"), the Debtor voluntarily commenced its chapter

11 case in the United States Bankruptcy Court for the District of Delaware.  On December 18,

2009, the Debtor filed its third amended joint plan of reorganization (the "Plan") [Docket No.

448].  On February 18, 2010, the Court confirmed the Plan [Docket No. 856], which became

effective on February 26, 2010 (the "Effective Date").

The Plan provided, inter alia, for a rights offering that entitled approximately 113 holders

of subordinated notes issued by the prepetition Debtor (the "Rights Offering Participants") to

subscribe to rights offering notes (the "New Notes") up to their allowed claim amount.  See Plan

art. V(H).  The Plan obligated the Debtor to mail subscription forms to the Rights Offering

Participants, and required the Rights Offering Participants to exercise their subscription rights by

returning the completed subscription forms to the Debtor.  Plan art. V(H)(3).

### A.  The Rights Offering Transaction Between New Generation and the Debtor

Shortly after the Petition Date, New Generation, a Rights Offering Participant, purchased

subordinated notes in the face amount of $5 million (the "First Lot").  There is no dispute that

New Generation duly exercised its subscription rights associated with the First Lot.  In January

2010, New Generation purchased an additional set of subordinated notes in the face amount of

$2.5 million (the "Second Lot") held by several funds affiliated with Nomura Corporate

Research and Asset Management (collectively, "Nomura").  There is no dispute that Nomura had

already subscribed to the New Notes associated with the Second Lot prior to their assignment to

New Generation.  To effectuate its subscription to the New Notes associated with the Second

2

Lot, New Generation submitted to the Debtor the fourteen assignment agreements pursuant to which it acquired its rights in the Second Lot from Nomura. Along with the assignment agreements, New Generation submitted a signature page that listed the five New Generation entities to which the Second Lot and the associated New Notes were allocated. However, New Generation did not provide the Debtor with the actual allocation among these five entities of the Second Lot or the New Notes associated with the Second Lot.

To determine the allocation of the New Notes associated with the Second Lot, the Debtor initiated the correspondence that ensued between it and New Generation. In response, New Generation provided the Debtor with an allocation of the face amount of the Second Lot (the "Face Amount") among its five entities, rather than providing the Debtor with an allocation of New Notes based upon New Generation's allowed claim amount associated with the Second Lot (the "Claim Amount"). Shortly thereafter, the Debtor sent New Generation confirmation notices using the Face Amount, not the Claim Amount. At no time prior to the Effective Date did New Generation notify the Debtor of the error (the "Distribution Error") in using the Face Amount instead of the Claim Amount.

In accordance with the Plan and the Court's order confirming the Plan, the Debtor implemented the Plan and consummated the transactions contemplated by the rights offering on or shortly after the Effective Date. On May 11, 2010, New Generation sent the Debtor a demand letter identifying the Distribution Error and seeking additional New Notes or equivalent compensation.[2] The Debtor did not meet the demands of New Generation, spurring the Motion and the related pleadings.

---

[2]     The demand letter was addressed to Bradley C. Farris of Latham & Watkins, counsel to the Debtor, from Gary J. Mennitt of Dechert LLP on behalf of New Generation. Reply Ex. B.

New Generation filed its Motion requesting the Court to enforce the terms of the Plan for

the purpose of ordering the Debtor to remit additional value to New Generation in the form of

New Notes or their cash equivalent, and the Debtor has responded.  An evidentiary hearing on

the Motion was held on September 23, 2010, and closing arguments were heard on November 1,

2010.  This matter has been fully briefed and argued, and it is ripe for decision.

### B.  New Generation's Position

New Generation seeks an order enforcing the Plan for the purpose of ordering the Debtor

to issue additional value to New Generation based upon its subscription rights associated with

the Second Lot.  Motion ¶ 29.  New Generation insists that "[it] wants what the Plan provides,

nothing more."  Id.  In its oral and closing arguments, New Generation has relied exclusively on

principles of contract law to vindicate its position, arguing that the assignment agreements

pursuant to which it acquired the Second Lot, the subscription forms apparently submitted by

Nomura, and the Plan independently and collectively endowed New Generation with a

contractual right to the maximum amount in New Notes corresponding to the Second Lot.  New

Generation faults the Debtor for the Distribution Error and maintains that "[b]ut for the

negligence of Accuride and its counsel, New Generation would have received the full

subscription and would not have been damaged."  Id.  New Generation therefore contends that it

is still entitled to receive from the Debtor the balance of New Notes, or their cash equivalent,

which it would have received but for the Distribution Error.  Id.; Reply at 2-3.

### C.  The Debtor's Position

The Debtor argues that New Generation bore, at all times, the burden of providing the

Debtor with the requisite information in accordance with the relevant provisions of the Plan

sufficient for the Debtor to issue the New Notes to which New Generation intended to subscribe.

The subscription information that New Generation submitted to the Debtor did not include the allocation of the New Notes associated with the Second Lot among New Generation's five listed entities. Objection ¶ 13. As a result of this defect, the Debtor contends that it could not issue the New Notes to New Generation without more information. Id. ¶ 13-14. The Debtor notified New Generation accordingly and invited it to cure this defect. The Debtor argues that "when [it] gave New Generation an opportunity to cure the defects in its submission, the burden remained on New Generation to provide the information and to ensure that it was subscribing in the amounts it desired." Id. ¶ 15.

The Debtor further maintains that the relevant Plan provisions insulate it from liability for any errors in the subscription information New Generation submitted to the Debtor. Id. ¶ 14. As such, the Debtor argues that the Distribution Error discovered by New Generation after the New Notes were issued pursuant to the Plan is not attributable to the Debtor, nor should the Debtor be held liable for any asserted losses to New Generation as result of the Distribution Error. Id. ¶ 14-15.

The Debtor additionally argues that New Generation should be estopped from seeking additional value from the Debtor because New Generation effectively consented to the scheduled distribution of New Notes by the Debtor. The Debtor notified New Generation twice to confirm New Generation's subscription amount and to provide instructions for payment in exchange for the New Notes to be issued to New Generation. Id. ¶ 13-14. The Debtor insists that New Generation had at least three opportunities to provide the Debtor with the precise amount in New Notes to which it intended to subscribe, but at no time prior to the distribution of New Notes as contemplated under the Plan did New Generation raise the Distribution Error. Id. ¶ 10. For these reasons, the Debtor asserts that the Motion should be denied.

5

## II.  <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  This matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## III.  <u>DISCUSSION</u>

The Motion presently before the Court requires the consideration of specific provisions of the Plan.  In accordance with 11 U.S.C. § 1141(a), which states that "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor," the Plan constitutes an enforceable contract between the parties to the Motion.  Based upon the Court's construction of the Plan, the Court concludes that the Debtor has fulfilled its contractual obligations to New Generation as they relate to the distribution of New Notes associated with the Second Lot.  Accordingly, New Generation is not entitled to the distribution of additional value on account of the Second Lot.

**A.  The Plan Required New Generation to Submit the Requisite Subscription Information to the Debtor.**

There is no dispute that New Generation was entitled to subscribe to the Claim Amount. The Debtor does not dispute that Nomura assigned to New Generation its subscription rights to the New Notes associated with the Second Lot.  Although New Generation frames the issue as a question of entitlement, the issue before the Court is not the precise amount in New Notes to which New Generation was entitled to subscribe under the Plan, but rather the precise amount in New Notes to which New Generation actually and validly subscribed.

The Plan required the Debtor to disseminate subscription forms to the Rights Offering Participants.  Plan art. V(H)(3).  Thereafter, the Plan placed the burden on the Rights Offering

6

Participants to ensure that the Debtor "actually received" their "duly completed" subscription forms by the subscription deadline. Id. The Plan provides that any Rights Offering Participant whose subscription form was not timely received by the Debtor "shall be deemed to have forever and irrevocably relinquished and waived its right to participate in the Rights Offering." Id. Under the Plan, each Rights Offering Participant was required to inform the Debtor of the amount in New Notes to which it intended to subscribe, up to its respective allowed claim amount. Id.

The Plan further provided the Debtor with reasonable discretion to determine "the timeliness, validity, form, and eligibility of any exercise, or purported exercise, of Subscription Rights." Plan art. V(H)(6). If the Debtor discovered any defects in a subscription form, the Plan required the Debtor to "use commercially reasonable efforts to give notice" of such defects to the corresponding Rights Offering Participant and to allow the Rights Offering Participant an opportunity to cure the defects. Id. Under the terms of the Plan, "[a] Subscription Form shall be deemed not to have been received or accepted until all irregularities have been waived or cured," such that the burden remained on the Rights Offering Participants to cure any defects in their subscription forms. Id.

Accordingly, New Generation bore the burden of submitting to the Debtor the requisite information in order to actually and validly exercise its subscription rights to the New Notes associated with the Second Lot. However, the subscription information that New Generation initially submitted to the Debtor was insufficient for the Debtor to consummate the rights offering transaction because New Generation failed to inform the Debtor of the allocation of the New Notes among the five listed New Generation entities. The record before the Court reflects that each of the assignment agreements between Nomura and New Generation that were

submitted to the Debtor by New Generation for the purpose of exercising its subscription rights referenced the assignees on a signature page attached to the agreements, which simply listed the five New Generation entities, without any allocations of rights among them. Consequently, the record reflects that the Debtor indeed did not initially have adequate information to issue to New Generation the New Notes associated with the Second Lot. On cross-examination, New Generation's witness conceded as much. Therefore, the Court concludes that the subscription submissions by New Generation to the Debtor were defective.

As prescribed by the Plan, the Debtor informed New Generation of the defect in its subscription submissions, which apparently spurred the flurry of emails that were thereafter exchanged between New Generation and the Debtor. New Generation responded to the Debtor's inquiry via an email dated February 4, 2010, in which it provided the allocation of the Face Amount, not the Claim Amount, among the five aforementioned New Generation entities. In its email, New Generation requested the Debtor to ensure "that the correct quantity of corresponding rights goes to each account."[3]

Based upon this information, the Debtor then confirmed the allocation designated by New Generation in a spreadsheet created by the Debtor and submitted to New Generation for review. This spreadsheet was circulated and amended by the parties through a series of emails on February 5, 2010.[4] There is no dispute that the Debtor used the allocations of the Face

---

[3]     The email dated February 4, 2010 was sent by Wyn Owens of New Generation to Jason Morelli of Latham & Watkins, counsel for the Debtor, and included an attached list allocating the Second Lot among the five New Generation entities with corresponding account information. Trial Ex. C.

[4]     The emails were exchanged between Jason Morelli, Wyn Owens, and Michael Weiner and Chris McHugh of New Generation. Trial Ex. C.

Amount as provided by New Generation, rather than calculating and using the corresponding

Claim Amount.

Thereafter, the Debtor sent New Generation two notices indicating the amount in New

Notes that the Debtor was preparing to issue pursuant to the rights offering under the Plan.  On

February 11, 2010, the Debtor sent New Generation a set of confirmations of the subscription

amounts allocated to each of the five entities to which New Generation had allocated the New

Notes associated with the Second Lot.  Objection Ex. 3.  Upon review of these confirmations,

New Generation replied via email that these confirmation notices were "correct" in all respects

relevant to this dispute.[5]  On February 19, 2010, the Debtor sent New Generation a set of notices

to provide payment in exchange for the New Notes to which New Generation had subscribed.

Objection Ex. 4.  New Generation was instructed to "carefully review" these notices and request

additional information in the event that it had any questions.  Id.

The confirmation and the payment notices both indicated that New Generation had been

scheduled to receive New Notes in the Face Amount, not the Claim Amount.  However, there is

no evidence that New Generation inquired about or contested the amounts in New Notes that the

Debtor was scheduled to distribute to New Generation.  Further, there is no dispute that New

Generation remitted payment to the Debtor in accordance with the payment notices in exchange

for the amount in New Notes associated with the Second Lot.  The Court therefore finds that the

Debtor provided New Generation with ample opportunities to cure the initial defect in its

---

[5]      Chris McHugh stated in his email to Jason Morelli on February 12, 2010 that the amounts
indicated in the confirmations were correct for four of the five accounts.  The dispute concerning
the amount for the fifth account pertained to the initial assignment by Nomura, but it has since
been resolved.  See Objection ¶ 8 n.4; J. Morelli Email to C. McHugh, Feb. 11, 2010, Trial Ex.
C.

subscription submissions by providing the Debtor with sufficient information to consummate the distribution of New Notes associated with the Second Lot.  Moreover, the Court finds that New Generation cured the defect by providing the Debtor with the requisite information.

**B.  The Debtor is Not Liable for the Distribution Error.**

It is not lost upon the Court that New Generation and the Debtor both erred in their use of the Face Amount rather than the Claim Amount, which is the maximum amount in New Notes to which New Generation was entitled to subscribe.  The Court further acknowledges that New Generation intended to subscribe to the maximum amount in New Notes to which it was entitled, and that the Debtor  was aware of this intention and did not dispute its propriety.  Nonetheless, the Court finds that the relevant Plan provisions placed the burden on New Generation to actually and validly subscribe to the New Notes in the amount it desired, up to the Claim Amount.  Therefore, the burden remained with New Generation to adequately cure its subscription defect and ensure that the Debtor had and used the correct information to distribute the precise amount in New Notes to which New Generation intended to subscribe.

Under the Plan, the Debtor is not liable for any errors in the subscription information submitted by New Generation because the burden of submission, at all times, remained with New Generation.  The Plan further provides "that neither the Debtors nor Reorganized Debtors . . . shall incur any liability for giving, or failing to give, such notification and opportunity to cure" any defects in the subscription forms submitted by New Generation.  Plan art. V(H)(6).  The Debtor therefore was not liable for the Distribution Error that arose after New Generation was invited to cure the initial defect in its subscription submissions.

Accordingly, the Court concludes that the Debtor discharged its duty to New Generation under the Plan, and that New Generation is not entitled to any further distributions of New Notes or equivalent compensation on account of the Second Lot.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny the Motion.  An appropriate Order follows.

BY THE COURT:

Dated:        Wilmington, Delaware
              November 17, 2010            _____
                                           Brendan Linehan Shannon
                                           United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ACCURIDE CORPORATION, et al. | ) | Case No. 09-13449  (BLS) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related to Docket Nos. 1121, 1145, |
| | ) | and 1146 |
| _____ | ) | |

**ORDER**

Upon consideration of the motion (the "Motion") [Docket No. 1121] of New Generation

Advisors, LLC to enforce the third amended joint plan of reorganization for Accuride

Corporation (the "Reorganized Debtor"); the objection [Docket No. 1145] of the Reorganized

Debtor to the Motion; and the reply thereto [Docket No. 1146]; and for the reasons set forth in

the accompanying Opinion, it is hereby

ORDERED, that the Motion is DENIED.

BY THE COURT:

_____
Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:      Wilmington, Delaware
            November 17, 2010